373 So.2d 738 (1979)
SOUTHERN HARDWARE CO., LTD., Plaintiff-Appellant,
v.
HONEYWELL INFORMATION SYSTEMS, INC., Defendant-Appellee.
No. 13868.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1979.
Rehearing Denied July 30, 1979.
Writ Refused October 8, 1979.
*739 Madison, Files, Garrett, Brandon & Hamaker by David I. Garrett, Jr. and J. Lawrence Mullens, Monroe, for plaintiff-appellant.
Snellings, Breard, Sartor, Inabnett & Trascher by Kent Breard, Monroe, for defendant-appellee.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearing Denied July 30, 1979.
BOLIN, Judge.
Plaintiff sued defendant for damages occasioned by defendant's failure to deliver a computer system in accordance with a lease/purchase agreement entered into by the parties. Finding plaintiff had waived his right to damages under an exculpatory clause contained in the agreement, the trial court sustained defendant's exception of no cause of action. We reverse and remand.
Among the facts alleged in plaintiff's petition are the following: Plaintiff and defendant began negotiations in July 1974 for plaintiff to lease, with an option to purchase, one of defendant's mini-computer systems. These negotiations resulted in a written contract being prepared by defendant and presented to plaintiff for approval. Although this contract did not provide a delivery date, plaintiff signed it on April 9, 1975, and forwarded it to defendant.
By May 16, 1975, defendant had not signed the agreement and because of this delay plaintiff informed defendant, by written notice, that it had canceled all existing contractual relations. Despite this notice defendant signed the agreement on May 20th and once again presented it to plaintiff. However, plaintiff refused to withdraw its cancellation at that time.
Shortly thereafter more negotiations were conducted. Plaintiff advised defendant that it would not renew the contract unless defendant would guarantee a firm delivery date. In response defendant orally guaranteed delivery by August 28, 1975. Conditioned upon this oral guarantee, plaintiff agreed to reenter the contractual relationship as set forth in the previously signed agreement.
In anticipation of the delivery and installation of the equipment, plaintiff engaged in substantial remodeling of a portion of its business premises and hired additional personnel to operate the equipment. The *740 equipment was not delivered on August 28, however, and plaintiff reluctantly agreed to extend the delivery date to September 28. As this extended delivery date approached, plaintiff was again informed there would be additional delays and that the computer system could not be delivered until November 15 or perhaps later. Upon receiving this information, plaintiff again canceled the contract by written notice to defendant on September 26.
Suit was filed on June 11, 1976, seeking primarily the recovery of expenses incurred in preparing for the installation of the equipment and damages resulting from the lost use of the equipment. After some preliminary issues were disposed of, defendant filed an exception of no cause of action based on the following provision of the contract:
Honeywell will not be liable for any failure or delay in performance due in whole or in part to any cause beyond Honeywell's control. In no event will Honeywell be liable for any indirect, special or consequential damages arising out of this Agreement or the use of any equipment, programs, documentation and services provided in this Agreement.
The trial court found that since the contract stated plaintiff would prepare for the installation and operation of the equipment at its own expense, the damages sought by plaintiff were "damages arising out of this agreement." Consequently, it sustained the exception. Plaintiff appeals.
At the outset, we note that the function of an exception of no cause of action is to test the legal sufficiency of plaintiff's petition, accepting as true all well-pleaded allegations of fact. Furthermore, every reasonable interpretation in favor of sufficiency must be accorded the petition in order to afford the litigant his day in court. Hero Lands Company v. Texaco, Inc., 310 So.2d 83 (La. 1975).
Bearing this in mind, consideration of defendant's exception to plaintiff's petition together with the written agreement presents three issues: (1) whether parol evidence is admissible to prove the guaranteed delivery date; (2) the interpretation and validity of the provision limiting defendant's liability; (3) the effect of the contract clause requiring written notice of default before cancellation of the contract.
In order for plaintiff's petition to state a cause of action, parol evidence must be admissible to prove the alleged guaranteed delivery date. The written agreement does not mention a delivery date and further states: "This agreement may be amended only by an instrument in writing executed by Customer and Honeywell. * * This agreement represents the entire agreement between the parties and supersedes all prior oral and written proposals and communications." Defendant strenuously urges that under these provisions, parol evidence is inadmissible to prove anything beyond what is contained in the written agreement and since there is no stated delivery date it cannot be shown to be in default of its obligation.
We do not agree. While it is true that parol evidence is not admissible to prove a collateral agreement which is inconsistent with the written contract, it is admissible to supply a patent deficiency in the contract. This rule is particularly applicable to situations where the contract is silent regarding an essential term or a term the parties would necessarily have considered. Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367 (La.1953); Stanley v. Orkin Extermination Co., Inc., 360 So.2d 225 (La.App. 1st Cir. 1978); Hicks v. Rucker Pharmacal, Inc., 367 So.2d 399 (La.App. 2d Cir. 1978). Despite the two provisions quoted above, we find the date for delivery of the equipment to be an essential element to this contract and therefore parol evidence is admissible to prove the intent of the parties regarding it.
The second issue involves the interpretation of the contract provision which the trial court found to be a waiver of plaintiff's right to recover damages resulting from defendant's failure to deliver the computer equipment. Plaintiff contends this interpretation of the provision renders it invalid since it is against public policy to *741 allow defendant to immunize itself from liability for willful failure to perform its obligations. Plaintiff further contends such an interpretation would render the provision invalid as an obligation based on a potestative condition, since it would leave defendant free to perform or not as it so pleased.
While we do not find it necessary to determine the validity of the provision, we do find the trial court gave an incorrect construction to it. Even assuming the provision is valid in all respects, plaintiff's petition has stated a cause of action.
Analysis of the language of this provision indicates it was intended to deal with two distinct sets of circumstances. The first sentence states defendant will not be liable for any failure or delay in performance due to any cause beyond defendant's control. The second sentence states defendant will not be liable for "indirect, special or consequential damages arising out of this agreement" or the use of the equipment or services. It therefore seems clear that when damages are sought for delay or failure in performance, the first sentence is controlling. The second sentence only becomes applicable if there are damages which result in some way from the actual performance of the agreement.
Defendant urges that the language of the second sentence excuses liability for damages for any reason whatsoever since any damages suffered by plaintiff would necessarily have "arisen from the agreement." We cannot agree with this interpretation since it would render the first sentence useless. If no damages whatsoever may be recovered by virtue of the second sentence, the effect of the first sentence, which would allow recovery for delay or nonperformance within the control of defendant, would be totally nullified.
Furthermore, the provision taken as a whole makes a clear distinction between delay or failure damages and damages termed as "indirect, special, or consequential." While it is true, in a sense, that any damages suffered by plaintiff as a result of its dealings with defendant would arise from the agreement, we find the damages actually sought by this petition are direct damages due to the failure or delay in performance by defendant.
The trial court found the damages sought were "arising out of the agreement" (although it did not decide whether they were direct or indirect) since the contract provided plaintiff would prepare for the installation and operation of the equipment at its own expense. We find this conclusion incorrect since the plaintiff allegedly suffered loss from the expenditure of these funds only because defendant failed or delayed its performance. Consequently, a trial on the merits is necessary to determine the cause of the delay since plaintiff has alleged it was a willful and deliberate act rather than the result of some occurrence beyond defendant's control.
The final issue concerns the following provision of the contract:
If Honeywell or customer is in default under this agreement and such default continues for 30 days after written notice by the other party, this agreement may be terminated by such other party.
Defendant claims this provision bars plaintiff's suit since no written notice of default was given.
As previously stated, plaintiff's petition alleges defendant agreed to deliver the equipment on August 28. This date was extended by mutual agreement to September 28. On September 26 defendant informed plaintiff it could not possibly deliver the equipment until November 15 at the earliest. Upon receiving this information, plaintiff wrote to defendant stating that because of this default in delivery it was cancelling the contract.
We find the letter of September 26 to be sufficient notice under the contract provision. A written demand putting an obligor in default as a prerequisite to recovery of damages need not be in any particular form and the sufficiency of such a demand must be considered in light of the circumstances surrounding it. Fox v. Doll, 221 La. 427, 59 So.2d 443 (1952); Southern Construction Co. *742 v. Housing Authority of the City of Opelousas, 250 La. 569, 197 So.2d 628 (1967). According to plaintiff's allegation, this letter clearly informed defendant that plaintiff considered it to be in default under the agreement. While it may be true that as of the date of the letter plaintiff did not have the right to terminate the contract, defendant did not respond with delivery within the required 30 day period.
For the foregoing reasons, the judgment is reversed and the case remanded for further proceedings. Cost of this appeal is assessed to defendant; all other costs to await final determination of the case.